Chief Magistrate Judge Mary Alice Theiler

FILED LODGED ENTERED RECEIVED
AUG 09 2013
CLERK U.S. DISTRICT COURT
AT SEATTLE
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. MJ13-400 |
|---|---|
| Plaintiff | COMPLAINT FOR VIOLATION |
| v. | |
| JASON LAU, | |
| Defendant. | |

BEFORE the Honorable Mary Alice Theiler, Chief United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1
### (Assaulting, Impeding, Resisting, and Interfering with Federal Officers)

On or about, August 8, 2013, in Whatcom County, within the Western District of Washington, JASON LAU did knowingly and intentionally forcibly assault, oppose, impede, intimidate, resist, and interfere with Officers of the United States Customs and Border Protection Agency, Department of Homeland Security, to include Officer Tony Sluder and Officer Isaiah Owen, both persons designated in in Title 18, United States

1  Code, Section 1114, while the officers were engaged in, and on account of, the
2  performance of their official duties.
3  　　　　It is further alleged that this offense involved the intent to commit another felony,
4  namely, Flight from an Immigration Checkpoint in violation of Title 18, United States
5  Code, Section 758, as alleged in Count 2, and that during the offense outlined in this
6  Count, JASON LAU made physical contact with the victims.
7  　　　　All in violation of Title 18, United States Code, Section 111(a)(1).
8
9  **COUNT 2**
   **(Flight from an Immigration Checkpoint)**
10
11 　　　　On or about, August 8, 2013, in Whatcom County, within the Western District of
12 Washington, JASON LAU knowingly and intentionally did flee and evade a checkpoint
13 operated by a federal law enforcement agency and did flee Federal, State, and local law
14 enforcement agents in a motor vehicle operated in excess of the speed limit.
15 　　　　All in violation of Title 18, United States Code, Section 758.
16
17 　　　　The undersigned complainant, FRANK KERR, being first duly sworn on oath,
   further deposes and says:
18
19 **INTRODUCTION**
20 　　1.　　I am a Special Agent with the United States Department of Homeland
21 Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security
22 Investigations (HSI). I have been employed with HSI since April 2007, and I am
23 assigned to the Blaine, Washington, office. Before my employment with HSI, I was
24 employed as a Police Officer/Deputy Sheriff in the State of Oregon for approximately 12
25 years. I have completed the Criminal Investigators Training Program and the
26 Immigration and Customs Enforcement Special Agent Training Program at the Federal
27 Law Enforcement Training Center. The information contained in this Complaint is based
28

COMPLAINT / JASON LAU - 2

1 on my own investigation and the investigation of other law enforcement officers and
2 others who witnessed the events described below.

3   2.   The discussion below includes only the information I believe necessary to establish probable cause that JASON LAU committed the offenses alleged in this Complaint. I do not purport to summarize all of the evidence gathered during the course of my investigation, nor does the discussion below include all facts known to myself or others involved with this investigation.

## SUMMARY OF PROBABLE CAUSE

3.   On August 8, 2013 at approximately 12:05 p.m., I responded to the area of Boblett Street and Fir Avenue in Blaine, Washington, regarding a report of an individual who drove his vehicle through a United States border checkpoint without first obtaining clearance for entry into the United States.

4.   Upon arriving at the scene, I spoke with HSI Special Agent Jennifer Hinckley. Special Agent Hinckley told me that Customs and Border Protection (CBP) had a subject in custody who fled the Pacific Highway Port of Entry in Blaine, Washington, after being referred for secondary inspection at the checkpoint.

5.   Special Agent Hinckley said that she was stopped at the intersection of Pacific Highway and "H" Street in Blaine, Washington, when she saw a marked CBP vehicle with lights and siren activated traveling south on Pacific Highway. She also saw that the CBP vehicle appeared to be pursuing a silver Toyota RAV4. Special Agent Hinckley said that she turned and followed the CBP vehicle and watched the RAV4 turn onto Boblett Street and then onto Fir Avenue and stop.

6.   Special Agent Hinckley said that she watched the driver, later identified as JASON LAU, exit the vehicle. She also saw the two officers in the pursuing CBP vehicle exit their car and confront the driver. She said that the driver was very aggressive with the officers and that despite their orders that he stand down, he continued to yell at them and move toward them. She saw the officers unsuccessfully attempt to subdue the driver with pepper spray and watched the driver attempt to strike the officers. With her

assistance and that of another individual at the scene, the officers were able to subdue the driver and take him into custody.

7. The officers took the driver back to the Pacific Highway Port of Entry and placed him in a holding cell. He declined medical examination or treatment by Whatcom County EMS.

8. At approximately 12:35 p.m. on that same day, HSI Special Agent Burton Paddie and I interviewed the driver in the holding cell at the Pacific Highway Port of Entry. I read him his *Miranda* warning from an office-prepared card, and he stated that he understood his rights but would nonetheless speak with us.

9. During our interview, the driver provided his biographical information and confirmed that his name was JASON LAU.

10. He also explained that he had planned to travel to Canada that morning to go fishing. But upon arriving at the Canadian Pacific Highway Port of Entry, he was denied entry by Canadian officials. He was turned back and then returned to the United States. He stated that the Canadian border official gave him a form and told him to give it to the United States officer at the booth and that he would be allowed back into the United States.

11. He stated that upon arriving at the United States Pacific Highway Port of Entry primary booth, he was referred to secondary inspection and told that he would have to wait approximately two hours. He said that upon learning this, he became very angry as he believed it was unreasonable to have to wait that long. He said that he told the officer that he would not wait or submit to inspection and then sped away from the booth and into the United States. He said that he did not remember anything about the events that occurred after his departure from the checkpoint.

12. Finally, he indicated that he suffers from an unspecified mental disorder for which he requires medication but said he has been off his medication for an extended period of time.

13.     Based on my investigation, I determined that upon arriving at the point of entry, JASON LAU initially came in contact with CBP Officer Hensleigh, who was working the primary booth at the Pacific Highway Port of Entry on the morning of August 8, 2013. Officer Hensleigh confirmed that at approximately 11:35 a.m., a driver in a silver Toyota RAV4 approached the primary booth and presented a Washington State Driver's License issued to JASON LAU. The driver told Officer Hensleigh that he had just been refused entry into Canada. Officer Hensleigh said that he instructed the driver to proceed to the secondary inspection area and that the driver disregarded that instruction and drove off, exiting the checkpoint at a high rate of speed.

14.     I obtained and reviewed video footage and an accompanying audio recording of this encounter, and that video footage appears consistent with the account of Officer Hensleigh. The associated audio recording—although providing additional detail regarding the conversation between Officer Hensleigh and JASON LAU—likewise confirms that Officer Hensleigh instructed JASON LAU to proceed to secondary inspection and that he objected and refused.

15.     At approximately 11:35 a.m., CBP Officers Tony Sluder and Isaiah Owen were stationed at the checkpoint at the Pacific Highway Point of Entry. Shortly thereafter, they observed a silver Toyota RAV4 driven by an individual later identified as JASON LAU exit the checkpoint at a high rate of speed and leave the Pacific Highway Port of Entry. They got into a marked CBP vehicle and gave chase. They each confirmed that it took some time to catch up with the vehicle both because of the delay caused by getting into their vehicle and the high rate of speed at which the RAV4 was traveling. Each confirmed that during their pursuit, the CBP vehicle's overhead emergency lights and siren were active and that despite that, the driver continued to flee.

16.     During my investigation, I determined that the Pacific Highway Port of Entry does not itself have a posted speed limit. However, there are numerous vehicle barriers in place to prevent high speed exit from the port. Once outside the Pacific Highway Port of Entry and on Pacific Highway (State Route 543), the posted speed limit

COMPLAINT / JASON LAU - 5

is forty (40) miles per hour. Although Officers Sluder and Owen were not able to provide a specific numerical estimate of the RAV4's speed while traveling on Pacific Highway, both confirmed that they believe the RAV4 was traveling in excess of that posted speed limit of forty miles per hour.

17. Officer Sluder stated that at one point during the pursuit, the CBP vehicle caught up to the RAV4 and pulled up side-by-side while the two vehicles were stopped at an intersection. The officers ordered the driver to stop, but he responded by flipping his middle finger into the air in their direction and speeding away. The officers continued their pursuit until the driver eventually turned onto Boblett Street and then onto Fir Avenue. The RAV4 then stopped, and the driver exited. Officers Sluder and Owen did the same and drew their weapons, ordering the driver to yield. In response, he screamed at them to shoot him and then started toward them. The officers concluded that he was not armed and unlikely to present a mortal threat and thus holstered their weapons. Officer Sluder deployed his pepper spray, but the driver's movement and the wind rendered the pepper spray ineffective. As the driver continued to approach them, Officer Sluder deployed his baton and struck him twice in the thigh. During this fight, the driver attempted to strike Officers Sluder and Owen and at one point, did strike Officer Sluder, hitting his right eye. That punch resulted in a slight cut, swelling, and bruising.

18. Ultimately, with the aid of Special Agent Hinckley and a civilian who happened to be at the scene, the driver was subdued and taken into custody.

19. As stated earlier, that driver has been identified as the defendant, JASON LAU.

## CONCLUSION

20. Based on the facts outlined above, I believe there is probable cause to believe that JASON LAU committed the offenses alleged in Counts 1 and 2 of this Complaint.

*[signature]*

FRANK KERR, Complainant
Special Agent, Homeland Security Investigations

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 9 day of August, 2013.

*[signature]*

THE HONORABLE MARY ALICE THEILER
Chief United States Magistrate Judge